## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDRE JOHNSON (#375946) | CIVIL ACTION |
| VERSUS | |
| TYRONE KELLY, ET AL. | 20-186-SDD-RLB |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 31, 2022.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ANDRE JOHNSON (#375946)**                                         **CIVIL ACTION**

**VERSUS**

                                                                                          **20-186-SDD-RLB**

**TYRONE KELLY, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment filed on behalf of defendants Tyrone Kelly and Willie Washington (R. Doc. 17). The plaintiff has filed an Opposition (R. Doc. 18), and the parties have filed Replies (R. Docs. 19 and 20).

The *pro se* plaintiff, an inmate confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against defendants Kelly and Washington complaining that his constitutional rights were violated due to the use of excessive force. He seeks monetary relief.

Defendants move for summary judgment relying upon the pleadings; a Statement of Uncontested Material Facts; and the following exhibits:

**Exhibit A**: Affidavit of Edward Russ;
**Exhibit B**: August 31, 2019 Disciplinary Reports issued to offender Hilton Wilson(DOC #409905);
**Exhibit C**: August 31, 2019 Warden's Unusual Occurrence Report from Jaguar 4/Left;
**Exhibit D**: Medical Records of Plaintiff, Andre Johnson (DOC #375946);
**Exhibit E**: August 31, 2019 Disciplinary Report to Plaintiff, Andre Johnson (DOC #375946);
**Exhibit F**: August 31, 2019 Tiger 1/Right Warden's Unusual Occurrence Report;
**Exhibit G**: August 31 2019 Tiger 1/Right Tier Logbook;
**Exhibit H**: Affidavit of Tyrone Kelly;
**Exhibit I**: Affidavit of Willie Washington;
**Exhibit J**: Administrative Remedy Procedure No.: LSP-2019-2848;
**Exhibit K**: 2018 – 2020 ARP Input Screens of Plaintiff, Andre Johnson (DOC #375946);
**Exhibit L**: Louisiana State Penitentiary Directive No.: 14.006 – Administrative Remedy Procedure;

**Exhibit M**: Louisiana State Penitentiary Directive No.: 09.002 – Use of Force; and
**Exhibit N**: Department Regulation No. B-05-001 – Disciplinary Rules and Procedures for Adult Offenders.

The plaintiff opposes the Motion for Summary Judgment relying upon the pleadings, a Statement of Disputed Factual Issues, and his own Declaration.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary

judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges the following: On August 31, 2019, around 4:00 p.m., Edward Russ sprayed the plaintiff with a chemical agent while the plaintiff was being attacked by his cellmate in cell 6 on Jaguar 4, Left. The plaintiff was subsequently transferred to the shower on Tiger 1, Right.

Around 4:40 p.m., the plaintiff was still located in the shower when defendants Washington and Kelly arrived. The plaintiff was crying and begging to be taken to the hospital because he was in pain and was bleeding from the left side of his face and was having difficulty breathing. Defendants told the plaintiff to "shut the f&*k up." Defendant Washington then sprayed the plaintiff with such a large amount of chemical agent that defendants Washington and Kelly were forced to run from the shower area to avoid being overwhelmed by the chemical agent. At the time he was sprayed the plaintiff did not pose a threat.

A short time later the defendants returned, and this time defendant Kelly sprayed the plaintiff with a large amount of chemical agent before he and defendant Washington ran from the shower area. There was no objective need for use of force by defendants Washington or Kelly.

Neither defendant filed any report concerning the foregoing events. Subsequently Edward Russ filed falsified documents stating that he, not defendants Washington or Kelly, sprayed the plaintiff multiple times with the minimum amount of chemical agent needed to gain compliance.

In response to the plaintiff's allegations, defendants challenge the accuracy of the allegations alleged by the plaintiff and asserts that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and,

employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*. Undertaking the qualified immunity analysis, the Court finds that the defendant's motion should be granted.

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the

Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

The summary judgment evidence submitted by the defendants shows that, on August 31, 2019, around 1:20 p.m., Edward Russ responded to a beeper activation on Jaguar 4, Left. The plaintiff and his cellmate (Wilson) were fighting in their cell. Both inmates were given direct verbal orders to stop fighting, but both offenders refused to comply. Russ then administered the minimum amount of chemical agent necessary to gain compliance.[1] The inmates then complied with his orders and ceased fighting. Eight (8) grams of chemical agent was used.

Russ issued a disciplinary report to offender Wilson and authored a Warden's Unusual Occurrence Report regarding the incident. The plaintiff was moved to Tiger 1, Right.

On Tiger 1, Right, at approximately 4:52 p.m., Russ ordered the plaintiff to exit the shower cell for transfer to his new cell. The plaintiff refused, stating that he needed to see medical. Russ notified medical that the plaintiff needed to be seen. Russ then ordered the plaintiff to come to the cell bars to be restrained. The plaintiff refused.

Russ left to retrieve a can of chemical agent. Upon return, he again ordered the plaintiff to come to the cell bars to be restrained. The plaintiff again refused, and Russ administered the minimum amount of chemical agent necessary to gain compliance. The plaintiff still refused to

---

[1] Defendants assert in their Motion for Summary Judgment that this claim should be dismissed for failure to exhaust administrative remedies. However, Edward Russ, against whom these allegations are made, is not a party to this suit. Additionally, the plaintiff has filed a separate suit against Russ. *See Johnson v. Russ*, 19-cv-856. Accordingly, the Court will not address the exhaustion issue herein.

comply, and Russ called for a Cell Extraction Team. Medical was again notified due to the use of the chemical agent, and the plaintiff was given the opportunity to shower and a clean jumpsuit.

Russ issued a disciplinary report to the plaintiff for Aggravated Disobedience and authored a Warden's Unusual Occurrence Report regarding the incident. One hundred and ninety (190) grams of chemical agent was used. Russ states that did "not observe" defendant Kelly or Washington administer a chemical agent on the plaintiff. *See Affidavit of Edward Russ*, R. Doc. 17-4.

On the date in question, defendant Kelly was assigned to Patrol at Camp C, A Team. His duties were to pick up offenders in a transport van for their respective callouts. Defendant Kelly states that he did not enter the tiers to perform his duties and that he did not transport the plaintiff that day. Defendant Kelly states that he "does not recall" using a chemical agent on the plaintiff. *See Affidavit of Tyrone Kelly*, R. Doc. 17-11.

Defendant Washington was the Shift Major at Camp C, A Team on the date in question. As Shift Major, he would make rounds on the cellblocks and respond to calls for assistance. Defendant Washington was not on Tiger 1, Right when the plaintiff was escorted onto the tier, did not administer any chemical agent, and "did not observe" Russ or defendant Kelly using a chemical agent on the plaintiff. *See Affidavit of Willie Washington*, R. Doc. 17-12.

Under penalty of perjury the plaintiff asserts, in his sworn Statement of Disputed Factual Issues, that he was not sprayed with a chemical agent by Russ while located in the Tiger 1, Right shower. Rather, the plaintiff was sprayed with a large amount of chemical agent once by defendant Washington and then again by defendant Kelly. The defendants then refused to author unusual occurrence reports or issue disciplinary reports to the plaintiff to cover up their use of excessive force. Instead, Russ fabricated reports stating that he sprayed the plaintiff with a chemical agent due to the plaintiff's failure to obey his orders.

Although the issue is a close one, the competing assertions of the parties, the vague statements in the defendants' affidavits, and the physical evidence, present issues of credibility which are not susceptible of resolution on summary judgment. In his sworn statement, the plaintiff alleges that he was sprayed with an excessive amount of chemical agent, without justification or provocation, by defendants Washington and Kelly. The defendants have provided competing assertions via affidavits. Russ states that he did not see the defendants use excessive force on the plaintiffs. Defendant Kelly says he didn't enter the tier as a part of his duties but did not deny entering the tier for reasons outside of his duties. He also states that, "I don't recall using chemical agent on offender Johnson" but does not deny the plaintiff's claim. In short, plaintiff asserts that defendant Kelly was present and administered excessive chemical agent. Defendant Kelly's affidavit leaves open the possibility that both of these occurred as alleged.

Defendant Kelly does state that he did not use "excessive" force or witness anyone using excessive force. This, however, is a legal conclusion rather than a factual assertion.

Defendant Washington denies all involvement in the complained of events of August 31, 2019, and denies observing defendant Kelly administering a chemical agent. Additionally, the vast disparity in the number of grams of chemical agent used by Russ in his first and second alleged spraying of the plaintiff has not been addressed. The fact that over 20 times the amount of chemical agent was used the second time the plaintiff was allegedly sprayed, when both uses are alleged to have been the "minimal amount" necessary, is consistent with the plaintiff's allegations that defendants sprayed him with an overwhelming amount of chemical agent. On this showing, therefore, summary judgment should be denied.[2]

---

[2] The plaintiff additionally alleges that tier, lobby, and body camera footage will substantiate his allegations against defendant Kelly and Washington. However, a review of the record reveals that the plaintiff did not request that such footage be produced during discovery, and such footage is not located in the record. Additionally, the Court was informed in another matter (*see Johnson v. Gooden*, Civil Action No. 20-118-JWD-RLB (M.D. La.)) that

## **RECOMMENDATION**

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 17), be denied, and that this matter be referred back to the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on January 31, 2022.

                                            **RICHARD L. BOURGEOIS, JR.**
                                            **UNITED STATES MAGISTRATE JUDGE**

---

such footage is automatically recorded over after 30 days and cannot be recovered. Further, a person only intervenes in the automatic process when a request to preserve footage has been made within 30 days of the date it was recorded. Consequently, the Court cannot review the video footage on which plaintiff relies nor can it be considered as competent summary judgment evidence. However, the plaintiff's sworn statements alone are sufficient to overcome the defense of qualified immunity.